**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **TIMOTHY GOVE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-15-1659** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| | ) | |
| **Acting Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

Timothy Gove, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 13) and Defendant's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 14). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **GRANTS** Plaintiff's Motion, **DENIES** Commissioner's Motion, and **REMANDS** this matter to the Commissioner for further proceedings in accordance with this opinion.

## I.      Procedural Background

Plaintiff applied for DIB on September 14, 2010, alleging disability beginning on

October 1, 2005.  R. 17.  Plaintiff subsequently amended the alleged onset date to March 13,

2008.  R. 17.  Plaintiff's claim for DIB was denied on April 8, 2011.  R. 135.  After Plaintiff

asked for reconsideration of the denial of benefits, Defendant again denied Plaintiff's benefits

application on May 22, 2012.  R. 17, 142.  On July 15, 2012, Plaintiff requested a hearing before

an Administrative Law Judge ("ALJ").  R. 17, 144.  On November 6, 2013, Plaintiff had a

hearing before an ALJ, and on November 27, 2013, in a written decision, the ALJ determined

that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from

October 1, 2005 through June 30, 2013.  R. 37.

On January 16, 2014, Plaintiff requested a review of the ALJ's decision.  R. 12-13.  On

April 8, 2015, the Appeals Council denied Plaintiff's request for review.  R. 1.

## II.     Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2015).  The Court

must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  42 U.S.C. § 405(g) (2015) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.

Comm'r. Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990)).  Substantial evidence is "more than a mere scintilla."  *Richardson v.

Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229 (1938).  "It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Id*.; *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)

(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citations omitted).  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts.  *Id.* (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court.  *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Court shall find a person legally disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a) (2012).  The Code of Federal Regulations outlines a five-step sequential process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i) (2012).  If he is doing such activity, he is not disabled.  If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement."  20 C.F.R. § 404.1520(a)(4)(ii) (2012).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

3)  Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

4)  Determine whether the plaintiff retains the "residual functional capacity" to perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv) (2012).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

5)  Determine whether the plaintiff can perform other work, considering his residual functional capacity, age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v) (2012).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

Plaintiff has the burden to prove that he is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## III.   Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process.  At step one the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2005 through his last insured date of June 30, 2013.  R. 19.  The ALJ found that Plaintiff worked after the alleged disability onset date, but the work, "did not rise to the level of substantial gainful activity."  *Id*.

At step two, the ALJ first dismissed Plaintiff's "subjective complaints" that were not medically determinable under 20 C.F.R. § 404.1508.  R. 20.  The ALJ dismissed Plaintiff's complaints of bedsores, mononucleosis and bad knees because they were not supported by the medical records and evidence.  *Id*.  Then the ALJ examined Plaintiff's medically determinable impairments.  *Id*.  The ALJ found that Plaintiff had the following severe impairments: hypothyroidism, tachycardia, depression, sleep apnea, chronic fatigue syndrome, fibromyalgia, cervical spondylosis, lumbar disc herniation, obesity, and alcohol abuse.  R. 19-24.  The ALJ

found that Plaintiff's primary care physician, Dr. Susan B. Brinkley, and the nonexamining

consultative State agency medical expert agreed that as a result of these impairments, Plaintiff

"was limited to less than the full range of light exertional work." R. 24. Furthermore, the ALJ

found that Plaintiff's colitis/Chrohn's disease was not severe because there was no objective

evidence that his diagnosis had worsened. *Id.* Therefore, the ALJ concluded that Plaintiff "had

no functional limitations" as a result of this disease. *Id.*

    At step three, the ALJ determined that Plaintiff "did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525

and 404.1526)." *Id.* The ALJ particularly "considered Listings 3.10, 11.03, 12.04, and 12.09,"

along with the records submitted by medical doctors, and concluded that Plaintiff did not have

impairments under any section of Appendix 1. *Id.*

    Before considering the fourth step, the ALJ had to determine Plaintiff's residual

functional capacity ("RFC") under 20 C.F.R. § 404.1520(e). R. 26. The ALJ determined that

Plaintiff, "had the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b)" subject to

some nonexertional limitations: ". . . [Plaintiff] can never climb ladders, ropes or scaffolds. He

can frequently climb ramps and stairs, balance, stoop, kneel, and crouch. He should avoid all

exposure to hazards." *Id.* The ALJ was also persuaded by the testimony of Mr. David Humes,

the vocational expert, who opined that Plaintiff could be late to work one day per week. R. 34.

    At step four, the ALJ determined that Plaintiff "was capable of performing past relevant

work as a programmer/analyst." R. 36. The ALJ further concluded that this past relevant work

"did not require the performance of work-related activities precluded by [Plaintiff's] residual

functional capacity." *Id.*

At step five, the ALJ found that "there are other jobs existing in the national economy that [Plaintiff] is also able to perform." *Id*. The ALJ gave weight to the testimony of the vocational expert who stated that given Plaintiff's age, education, past relevant work experience, and RFC, an individual with Plaintiff's limitations would be able to perform the following occupations that exist in significant numbers in the national economy: technical support specialist, sales clerk, and general clerk. R. 37, 87-88.

Therefore, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 1, 2005, the alleged onset date, through June 30, 2013, the date last insured." R. 37.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in his favor or in the alternative, remand this matter to the Social Security Administration for a new administrative hearing because the ALJ erroneously assessed his RFC for the following reasons:

1) The ALJ determined that Plaintiff's depression was a severe impairment at step two of the sequential evaluation process, but failed to include any limitation related to this impairment in the RFC assessment, and failed to explain this discrepancy; and,

2) The ALJ failed to resolve the discrepancies between two State agency consultants' assessments of Plaintiff's impairments.

For the reasons set forth below, the Court remands this matter to the Commissioner for further proceedings in accordance with this opinion.

**A. The ALJ's RFC assessment includes limitations related to Plaintiff's depression.**

Plaintiff argues that the ALJ did not include any significant limitations upon Plaintiff's mental ability to perform basic work activities, despite finding that Plaintiff suffered from depression which was a severe impairment. Pl.'s Mot. 4-6. Plaintiff claims that as a result, the ALJ's assessment of his RFC fails to be supported by substantial evidence. Pl.'s Mot. 6.

6

Defendant responds that the ALJ did include limitations related to Plaintiff's depression in the RFC assessment.  Def.'s Mot. 12.  Defendant argues that the ALJ discussed, for example, Plaintiff's difficulty getting up, predicting when and if he would sleep, making appointments or completing tasks, lying in bed, and not being able to get to the bathroom or phone.  *Id*.

RFC is a measure of a person's ability to perform physical and mental activities in a work setting on a "regular and continuing basis" (*e.g.*, eight hours a day, five days a week—in spite of any impairments).  20 C.F.R. § 404.1545(b)-(c) (2015); SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996).  In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms (*e.g.*, pain).  *See* 20 C.F.R. § 404.1545(a) (2015); *see also* 20 C.F.R. § 404.1529(a) (2015).  The ALJ must also present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)," and must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *Barton v. Astrue*, 495 F. Supp. 2d 504, 510 (D. Md. 2007).

A severe impairment is one which, "significantly limits [Plaintiff's] physical or mental ability to do basic work activities."  *See* 20 C.F.R. § 404.1520(c) (2012).  Basic work activities include "the abilities and aptitudes necessary to do most jobs" such as walking, standing, and using judgment.  *See* 20 C.F.R. § 404.1521(b) (2015).  With regard to the assessment of mental abilities, "a limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision . . . may reduce [Plaintiff's] ability to do past work and other work."  20 C.F.R. § 404.1545(c) (2015).

In this case, the ALJ determined that Plaintiff's depression was a severe impairment at step two of the evaluation process.  R. 19.  In the RFC assessment, the ALJ found that Plaintiff had difficulty getting out of bed and getting to morning appointments in a timely fashion due to his depression.  R. 35.  The ALJ also determined that Plaintiff had the requisite RFC to "perform light work as defined in 20 C.F.R. § 404.1567(b)."  R. 26.  As a result, the ALJ limited Plaintiff to work where he can never climb ladders, ropes, or scaffolds, must avoid all hazards, and can only have an occupation that would allow him to be tardy one day per week.  R. 26, 34.  The ability to get out of bed and get to work is a basic work activity as it is necessary to do all jobs.  The ALJ explicitly acknowledged that this was a limitation resulting from Plaintiff's depression.  Thus, there was no discrepancy that the ALJ needed to address.

**B.  The ALJ failed to explain whether she was rejecting contradictory evidence.**

Plaintiff argues that the ALJ erroneously accorded significant weight to the opinions of State Agency consultants Linda Dougherty, Ph.D and Madelyn Miranda-DeCollibus, Psy.D despite their conflicting opinions.  Pl.'s Mot. 7.  Plaintiff highlights that Dr. Dougherty concluded that Plaintiff's affective and attention deficit disorders were severe impairments, and that Plaintiff was limited to simple, unskilled work.  Pl.'s Mot. 6-7, R. 100.  Then, Plaintiff notes that Dr. Miranda-DeCollibus found that his mental impairments were non-severe.  *Id.*  Plaintiff claims the ALJ erroneously concluded that the findings of both consultants were "consistent with and not contradicted by the record as a whole."  Pl.'s Mot. 7 (citing R. 35).  In addition, Plaintiff relies on *See v. Washington Metro. Transit Auth.*, 36 F.3d 375, 384 (4th Cir. 1994) (citations omitted) for the proposition that, ". . . when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing."  Pl.'s Mot. 8.  As a result of the ALJ's failure to adequately explain the

weight given to each consultant's opinion, Plaintiff argues that the ALJ's conclusions that

Plaintiff had the requisite RFC to do his past relevant work and other jobs identified by the

vocational expert, are directly contradicted by Dr. Dougherty's opinion that he is limited to

simple, unskilled work.  Pl.'s Mot. 8.  Plaintiff contends that under Dr. Dougherty's opinion, he

would be unable to perform his past relevant work or any of the work identified by the

vocational expert.  *Id*.

   In response, Defendant argues that the ALJ, "specifically noted the consultants' findings

with regard to activities of daily living; social functioning; concentration, persistence, or pace;

and episodes of decompensation."  Def.'s Mot. 13.  Defendant argues further that the ALJ's

discussion of the consultants' findings shows consideration with regard to the severity of

Plaintiff's impairments.  *Id*.  Defendant notes that Plaintiff does not argue that there was any

error in the ALJ's consideration of the treatment and examination records in this case.  *Id*.

Defendant contends that even if the ALJ committed a legal error for not addressing the

difference between the consultants' opinions, such error is harmless.  Def.'s Mot. 13-14.

   **1. An ALJ has to explain her reasoning for rejecting evidence and if an ALJ
    makes a mistake, Plaintiff must show it was a harmful error.**

   Plaintiff correctly points out that, "when faced with evidence in the record contradicting

his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his

rationale for so doing."  *See*, 36 F.3d at 384.  Furthermore, the ALJ has the responsibility to

indicate the weight given to medical evidence, otherwise the reviewing court will not be able to

make a determination about whether or not the substantial evidence burden has been met.

*Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984) (remanding the case because neither

the ALJ nor the Appeals Council indicated the weight given to various medical reports).

   The ALJ may give "significant weight" to an opinion without adopting every detail of

that opinion.  *Crudup v. Comm'r. Soc. Sec. Admin.*, SAG-13-850, 2013 WL 5938342, at *2 (D.

Md. Nov. 4, 2013) ("Assigning a physician's opinion 'significant weight' does not require the

ALJ to adopt each and every finding in an opinion.").  Even if an ALJ commits a legal error, the

burden is on Plaintiff to show that it is harmful error.  *Shinseki v. Sanders*, 556 U.S. 396, 409

(2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking

the agency's determination.") (citations omitted).  An error made by a court is not harmful unless

it affects the parties' "substantial rights."  *Id.* at 407.  Furthermore, "[n]o principle of

administrative law or common sense requires us to remand a case in quest of a perfect opinion

unless there is reason to believe that the remand might lead to a different result."  *Fisher v.

Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) (citations omitted).

>            **2.  The ALJ committed harmful error by not affirmatively rejecting
>                 contradictory evidence and explaining her rationale.**

The ALJ in this case discussed specific portions of the consultants' opinions and assigned

them "significant weight."  Specifically, the ALJ mentioned Dr. Dougherty's opinion that

Plaintiff had a moderate restriction of activities of daily living, moderate difficulties in

maintaining social functioning, moderate difficulties in maintaining concentration, persistence,

or pace and 1-2 episodes of decompensation.  R. 31.  The ALJ also mentioned Dr. Miranda-

DeCollibus' opinion that Plaintiff had a mild restriction of activities of daily living, mild

difficulties in maintaining social functioning, mild difficulties in maintaining concentration,

persistence, or pace, and no episodes of decompensation.  R. 32.  The ALJ did not mention that

Dr. Dougherty opined that Plaintiff should be limited to simple, unskilled work.  R. 106.  The

ALJ then stated that she was according "significant weight to . . . the opinions of the

consultative State agency medical and psychological experts as the opinions are consistent with

and not contradicted by the record as a whole."  R. 35.  According to *See*, the ALJ has a duty to

affirmatively reject evidence in the record that contradicts her conclusion.  *See*, 36 F.3d at 384 ("... when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing").  Because the ALJ concluded that Plaintiff had the requisite RFC to perform his past relevant work, which was not simple or unskilled, the ALJ had a duty to affirmatively reject the conclusion of Dr. Dougherty due to its contradictory nature.  By not affirmatively rejecting Dr. Dougherty's conclusion that Plaintiff should be limited to simple, unskilled work, the ALJ committed an error.

This finding does not conclude the Court's analysis because the Court must still determine whether the ALJ's error was harmful.  *See Shinseki*, 556 U.S. at 407.  In this case, the ALJ's failure to affirmatively reject Dr. Dougherty's opinion that Plaintiff should be limited to simple, unskilled work was a harmful error.  The ALJ's failure to reject Dr. Dougherty's opinion contradicts, without explanation, the ALJ's findings at steps four and five of the sequential evaluation process and affects Plaintiff's "substantial rights."  *See id*.  At step four, the ALJ concluded that Plaintiff could do his past relevant work as a programmer/analyst which she characterized as "light work."  R. 26.  However, the ALJ failed to affirmatively reject Dr. Dougherty's contradicting opinion that Plaintiff should be limited to simple, unskilled work in coming to her conclusion.  Therefore, there is a gap in reasoning that does not allow this Court to properly review the ALJ's conclusion.  Furthermore, the same issue arises in the ALJ's analysis at step five of the sequential evaluation process.  At step five, the ALJ based her hypothetical question to the vocational expert on the same RFC assessment that she used at step four.  R. 37. Without an explanation about whether Dr. Dougherty's conclusions were rejected, the Court cannot review the ALJ's reasoning with regard to her conclusion at step five of the sequential

evaluation process.

The ALJ's error in this case affects Plaintiff's substantial rights because "[a]n ALJ's conclusory opinion, which does not encompass a discussion of the evidence contrary to his findings, does not warrant affirmance."  *See See*, 36 F.3d at 384 (quoting *Director, OWCP v. Congleton*, 743 F.2d 428, 429 (6th Cir. 1984)).  Furthermore, the ALJ's failure to affirmatively reject Dr. Dougherty's conclusions, which conflict with the ALJ's finding that Plaintiff could do past relevant work, prevents proper review.  *See id.* ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).  Therefore, this case must be remanded for further explanation as to whether Dr. Dougherty's conclusions were rejected, and if so, why.

IV.    **Conclusion**

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion and **DENIES** Commissioner's Motion, and **REMANDS** this matter to the Commissioner for further proceedings in accordance with this opinion.

June 29, 2016

_____/s/_____
Charles B. Day
United States Magistrate Judge

CBD/yv/jg